PD-0184-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/17/2015 10:31:09 AM
Accepted 2/18/2015 9:33:28 AM
ABEL ACOSTA
CLERK

NO. PD-_____

IN THE
COURT OF CRIMINAL APPEALS

CHRISTOPHER MARCHEL HILL,
Appellant,

v.

THE STATE OF TEXAS,
Appellee.

On Discretionary Review From An Opinion Of The
Court of Appeals For The Eleventh Supreme Judicial
District Of Texas In Cause No. 11-13-00069-CR

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

February 18, 2015

ABEL ACOSTA, CLERK

THOMAS S. MORGAN
1902 W. ILLINOIS
MIDLAND, TEXAS 79701
(432) 683-2703
(432) 684-7314 FAX NUMBER
MANDYC@TOMSMORGAN.COM
STATE BAR I.D. NO. 14452500
ATTORNEY FOR APPELLANT
(COURT-APPOINTED)

i

NO. PD-_____

IN THE
COURT OF CRIMINAL APPEALS

CHRISTOPHER MARCHEL HILL,
                                                Appellant,

v.

THE STATE OF TEXAS,
                                                Appellee.

On Discretionary Review From An Opinion Of the
Court of Appeals For The Eleventh Supreme Judicial
District of Texas In Cause No. 11-13-00069-CR

PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

COMES NOW the Appellant, CHRISTOPHER MARCHEL HILL, by and

through his attorney of record, Thomas S. Morgan, who files this his Petition For

Discretionary Review, wherein he respectfully urges this Honorable Court to grant

Discretionary Review of the above styled and numbered cause pursuant to the rules of this Court, and in support thereof, the Appellant would respectfully show this Honorable Court as follows:

## IDENTITY OF PARTIES AND COUNSEL

The parties are as follows:

1.    CHRISTOPHER MARCHEL HILL, Appellant.

2.    Carolyn Thurmond representing the State of Texas, Appellee.

The defense attorney at trial was Thomas S. Morgan, 1902 W. Illinois, Midland, Texas 79701, and Thomas S. Morgan, 1902 W. Illinois, Midland, Texas, 79701, is counsel on appeal for Appellant.

The State's counsel at trial were Tommy Hull and Andrew Vander Hoeven, Assistant District Attorneys, Midland County Courthouse, 500 N. Loraine, Second Floor, Midland, Texas 79701.

The trial judge was Honorable George D. "Jody" Gilles, 142nd District Court of Midland County, Texas.

# TABLE OF CONTENTS

Page

Identity of Parties............................................................................ iii

Index of Authorities......................................................................... iv

Statement Regarding Oral Argument ........................................... 1

Statement of the Case..................................................................... 2

Statement of Procedural History ................................................. 2

Ground For Review......................................................................... 3

    CUTTING A PROSPECTIVE JUROR WHO DOES NOT
    COMPLETE A JUROR INFORMATION SHEET IS NOT A
    RACE NEUTRAL REASON TO OVERRULE A BATSON
    CHALLENGE

Reason for Review ........................................................................... 3

    WHEN A PROSECUTOR FAILS TO ASK QUESTIONS TO
    A PROSPECTIVE JUROR, IT CANNOT STATE ITS
    FAILURE TO ANSWER QUESTIONS IN A
    QUESTIONAIRRE IS A RACE NEUTRAL REASON FOR A
    BATSON CHALLENGE

Argument and Authorities............................................................... 4

Conclusion and Prayer.................................................................... 9

Certificate of Service...................................................................... 10

Certificate of Compliance.............................................................. 11

Appendix - Opinion of the Eastland Court of Appeals............... 12

# INDEX OF AUTHORITIES

| CASES | PAGE |
|---|---|
| *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) | 4, 5, 6, 7 |
| *Chivers v. State*, 796 S.W.2d 539 (Tex. App. - Dallas 1990, pet. ref'd) | 7 |
| *Emerson v. State*, 851 S.W.2d 269, 274 (Tex. Crim. App. 1993) | 4, 8 |
| *Harrison v. Ryan*, 909 F.2d 84 (3 Cir. 1990) | 6 |
| *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1990) | 6 |
| *United States v. Chinchilla*, 874 F.2d 695 (9 Cir. 1989) | 6, 7 |
| *United States v. Cunningham*, 713 F.Supp. 165 (D.C.N.C. 1988) | 7 |
| *United States v. Horsely*, 864 F.2d 1543 (11 Cir. 1989) | 6, 7 |
| *United States v. Hughes*, 880 F.2d 101 (8 Cir. 1989) | 7 |
| *United States v. Young-Bey*, 893 F.2d 178 (8 Cir. 1990) | 6 |
| *Whitsey v. State*, 796 S.W.2d 707, 716 (Tex. Crim. App. 1989) | 5, 7 |

No. PD-

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

CHRISTOPHER MARCHEL HILL                                    Appellant

v.

THE STATE OF TEXAS                                         Appellee

* * * * *

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

* * * * *

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW, the Appellant, CHRISTOPHER MARCHEL HILL, by and

through his attorney of record, Thomas S. Morgan, and respectfully urges this Court

to grant discretionary review of the above named cause, pursuant to the rules of the

Court.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant does not request oral argument.

1

## STATEMENT OF THE CASE

Appellant was charged by indictment of murder (C.R. 9-10). To this allegation, Appellant pled " not guilty". Following a jury trial, Appellant was found "guilty" as alleged in the indictment (C.R. 283). He was sentenced by the trial court to sixty (60) years imprisonment (C.R. 259). A timely notice of appeal was filed by Appellant (C.R. 229). In addition, a Motion for New Trial was filed (C.R. 231), which was denied without a hearing.

## STATEMENT OF PROCEDURAL HISTORY

In addition to the procedural history of the case set forth above in the "Statement of The Case,", the Eastland Court of Appeals affirmed the conviction on direct appeal on January 15, 2014.

## **GROUND FOR REVIEW**

CUTTING A PROSPECTIVE JUROR WHO DOES NOT COMPLETE A JUROR INFORMATION SHEET IS NOT A RACE NEUTRAL REASON TO OVERRULE A BATSON CHALLENGE

## **REASON FOR REVIEW**

WHEN A PROSECUTOR FAILS TO ASK QUESTIONS TO A PROSPECTIVE JUROR, IT CANNOT STATE ITS FAILURE TO ANSWER QUESTIONS IN A QUESTIONAIRRE IS A RACE NEUTRAL REASON FOR A BATSON CHALLENGE

3

## ARGUMENT AND AUTHORITIES

## GROUND FOR REVIEW

CUTTING A PROSPECTIVE JUROR WHO DOES NOT COMPLETE A JUROR INFORMATION SHEET IS NOT A RACE NEUTRAL REASON TO OVERRULE A BATSON CHALLENGE

Appellant contends, for the reasons set forth below, that because the State exercised peremptory challenges to minority venirepersons in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), reversible error exists.

The Eleventh Court of Appeals rejected Appellant's challenges on the basis that the State provided race neutral reasons. Namely, the Eleventh Court of Appeals found the State had given race-neutral reasons for its peremptory strikes. The reason for one of those venire persons. However, the Eleventh Court of Appeals decision ignored this Honorable Court. Namely, the State struck a Hispanic venire person for failing to completely answer their juror information sheet. The State did not inquire from this venire person about what information was necessary.

When the party striking has offered an explanation for exercising the strike, and further questioning of the panelist might have yielded more information, but little or no questioning of that panelist ensued, the record suggests that the striking party's explanation is <u>fictitious</u>. *See Emerson v. State*, 851 S.W.2d 269, 274 (Tex. Crim. App. 1993) (holding explanation that panelist struck because panelist was college

4

teacher or student and presumed to be liberal was not persuasive in light of failure to ask any questions of panelist); **Whitsey v. State**, 796 S.W.2d 707, 716 (Tex. Crim. App. 1989) (rejecting genuineness of strike when State contended it struck a teacher because of its belief teachers are liberal without asking any questions regarding their political or social outlook). Because the Eleventh Court of Appeals ruling did not consider these cases in rendering its decision, this Honorable Court should grant the petition for discretionary review.

A brief description of the facts is necessary. As part of its ten peremptory challenges, the State struck three Hispanic venirepersons (R.R.11 226-227). Appellant made a timely objection, pursuant to **Batson v. Kentucky**, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (R.R.11 226-228), regarding the prosecution's peremptory challenges.

The State then struck Juror Number 31, Mary Martinez, because she did not fill out a juror information sheet (R.R.11 227). Although Ms. Martinez did not complete a juror information sheet, the prosecuting attorney elected to ask no questions of Mary Martinez, with regard to information normally completed in filling out a juror information card (R.R.11 16-124).

Defense counsel stated a *prima facie* case of purposeful discrimination, upon making his **Batson** objection, and the trial court agreed, stating "the Court will make

the *prima facie* case and let the State respond" (R.R.11 227).

Upon the State giving its reasons for striking minority venirepersons, the trial court denied the *Batson* objection (R.R.11 228).

A defendant establishes a *prima facie* case of purposeful discrimination in the selection of the jury by showing that the prosecutor's use of its peremptory challenges, and in the other relevant circumstances, raises an inference that the State excluded venirepersons for a petit jury because of their race. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). See also *United States v. Young-Bey*, 893 F.2d 178 (8 Cir. 1990). And, the defendant need not be the same race as the excluded venireperson to be able to make a *Batson* objection, *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1990).

The number of minority venirepersons is not controlling; indeed, reversible error exists if the Government strikes only one black or Hispanic from the jury panel for other than a race neutral reason. *Harrison v. Ryan*, 909 F.2d 84 (3 Cir. 1990). See also *United States v. Horsely*, 864 F.2d 1543 (11 Cir. 1989). And, reversible error has been found when the prosecution exercised a peremptory challenge to only one Hispanic venireman and the only Hispanic alternate juror. *United States v. Chinchilla*, 874 F.2d 695 (9 Cir. 1989).

It is noteworthy that a *prima facie* showing of purposeful discrimination can

6

still be established when <u>only one</u> venireperson, who is a member of a minority, is struck. *United States v. Horsely*, *supra*, and *United States v. Cunningham*, 713 F.Supp. 165 (D.C.N.C. 1988). See also *United States v. Hughes*, 880 F.2d 101 (8 Cir. 1989).

It is preferable for the trial court to error on the side of the defendant's right to a fair and impartial jury trial with regard to the jury selection process. *United States v. Chinchilla*, 874 F.2d 695 (9 Cir. 1989).

Using a peremptory challenge to strike a potential juror, because of race, violates the equal protection guarantee of the United States Constitution. *Batson v. Kentucky*, 476 U.S. 79, 86, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986).

The Court of Appeals has held, in *Chivers v. State*, 796 S.W.2d 539 (Tex. App. - Dallas 1990, pet. ref'd), that reversible error does exist when there is no showing, on the record, that the prosecuting attorney inquired as to what the prosecutor complains of with regard to the State's *Batson* objection. Moreover, in *Whitsey v. State*, 796 S.W.2d 707, 716 (Tex. Crim. App. 1989), the Texas Court of Criminal Appeals rejected the genuineness of a strike when the State contended it struck a teacher because of the State's belief that teachers are liberal, without asking any questions regarding their political or social outlook; thus, by the State's failure to inquire of Mary Martinez basic information regarding herself is likewise reversible

7

error. *See also Emerson v. State*, 851 S.W.2d 269, 274 (Tex. Crim. App. 1993) (holding the explanation that, because the panelist was a college teacher or a student, and presumed to be liberal, was not persuasive in light of the State's failure to ask any questions of such panelist).

Consequently, the conviction should be reversed and a new trial ordered.

## CONCLUSION AND PRAYER

WHEREFORE, Appellant prays that, for the reasons set forth above, that this Petition for Discretionary Review be, in all things, granted, and a new trial should be ordered. The Appellant prays for any and all other relief to which he may be justly entitled.

Respectfully submitted,

THOMAS S. MORGAN
1902 W. ILLINOIS
MIDLAND, TEXAS 79701
(432) 683-2703 - TELEPHONE
(432) 684-7314 - FAX
MANDYC@TOMSMORGAN.COM

By:_____
    THOMAS S. MORGAN
    STATE BAR NO. 14452500
    ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

I, Thomas S. Morgan, hereby certify that on the ___17th___ day of February, 2015, a true and correct copy of the foregoing Appellant's Petition For Discretionary Review was hand delivered to the District Attorney, Midland County Courthouse, Second Floor, Midland, Texas 79701; and, was mailed by certified mail, return receipt requested, to the State Prosecuting Attorney, P. O. Box 12405, Capitol Station, Austin, Texas 78711.

_____
THOMAS S. MORGAN

10

## CERTIFICATE OF COMPLIANCE

### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.   This petition complies with the type-volume limitation of TEX. R. APP. P. 9.4 because:

   this petition contains __1,201__ words.

2.   This petition complies with the typeface requirements of TEX. R. APP. P. 9.4 and the type style requirements of TEX. R. APP. P. 9.4 because:

   this petition has been prepared in a proportionally spaced typeface using __ COREL WORDPERFECT X4__ in __14, TIMES NEW ROMAN__.

_____
Attorney for Appellant

11

Opinion filed January 15, 2015



In The

# Eleventh Court of Appeals

No. 11-13-00069-CR

## CHRISTOPHER MARCHEL HILL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 142nd District Court

Midland County, Texas

Trial Court Cause No. CR39347

## MEMORANDUM OPINION

The jury found Christopher Marchel Hill guilty of murder. The trial court assessed punishment at confinement for a term of sixty years and sentenced him accordingly. In five issues on appeal, Appellant contends that the trial court erred when it admitted Appellant's recorded statements, admitted evidence of two extraneous offenses, and denied his *Batson*[1] challenge. We affirm.

---

[1]*Batson v. Kentucky*, 476 U.S. 79 (1986).

It is undisputed that Appellant shot Jeremy Johnson once in his abdomen and twice in his right arm. It is also undisputed that the bullet that Appellant fired into Johnson's abdomen lacerated his colon and perforated a large artery in his groin area; he bled to death as a result of that abdominal wound.

On the day that Appellant shot and killed Johnson, a group of people had gathered at Deborah Conner's house to watch a Dallas Cowboys game. Appellant was among those who had gathered to watch the game. Some of the people who were present at the house were in the same room as Appellant and Johnson when the two had a verbal altercation. The witnesses who were present during the verbal altercation agreed that Johnson slapped Appellant across the face with an open hand and that Appellant shoved Johnson in response. Deborah broke up the fight and told Appellant to leave. According to the witnesses, he did.

After Appellant left, Deborah went across the street to check on an elderly neighbor, and everyone else sat down in the living room to watch the game. About thirty minutes after he left, Appellant returned. He opened the front door, stepped inside, and shot Johnson three times. According to the witnesses, Johnson was not armed, and when he saw Appellant with a gun, he raised his arms to shield his face and chest. Appellant said nothing after he shot Johnson; he just left. Deborah, who was still across the street, heard the gunfire and went outside. She saw Appellant driving away at a high rate of speed.

When Deborah returned to her house, she saw Johnson lying on the floor in the living room. Deborah called 911, and although she was screaming and hysterical, she can be heard on the recording of the call telling the 911 operator that "Chris Hill" had shot Johnson and that he had left in a gray Tahoe.

The first officers to arrive on the scene found it to be a chaotic one and began clearing people out of the house so that the paramedics could begin working on Johnson when they arrived. Paramedics were able to talk to Johnson at the

scene, but by the time that they arrived at the hospital, he was not breathing and was unresponsive. Johnson had lost too much blood and died.

After he left Deborah's house, Appellant drove to Odessa and picked up his girlfriend, Jordan Powell; they fled to Florida. As they were leaving Odessa, Appellant threw the gun out the window of his vehicle. A warrant was issued for Appellant's arrest, and United States Marshals found Appellant and Powell in a Florida motel room and arrested them. While Appellant and Powell were in jail in Florida awaiting extradition to Midland, two investigators for Seminole County, Florida—Robert Stephen Jaynes and Jennifer Spears—interviewed Appellant.

Initially, Appellant admitted that he and Johnson had been involved in an argument and that Johnson had punched him, but Appellant claimed that he left after the altercation. Appellant said that he had called someone in Dallas named "Little Texas" to have him beat up Johnson. Appellant said that he and Powell had come to Florida because he started getting death threats after Johnson was killed. Appellant did not know the real name of Little Texas or his phone number, and he claimed that he could not obtain the phone number from his call log because he had bought a new phone since the shooting.

Appellant claimed that surveillance cameras from a motel in Odessa would show that he was in Odessa at the time of the shooting. Investigators told Appellant that the surveillance videos should help Appellant unless his fingerprints and DNA were on the shell casings. Investigator Jaynes explained that DNA can be left when handling the bullets and loading the weapon from which the bullets are fired. Appellant said nothing in response. Powell had already told investigators that Appellant had thrown a gun out the window of his vehicle after they left Odessa. When Investigator Jaynes told Appellant that it did not make sense to throw a gun out a vehicle window unless it had been used in the shooting, Appellant said that Powell had lied about that. Investigators then asked Appellant

why all of the eyewitnesses claimed that they saw a gray Chevrolet Tahoe leaving the scene. Appellant maintained that he left after the fight but before the shooting.

The investigators talked with Appellant about what the eyewitnesses had told the police. They also told him that retrieving a gun from his car could be interpreted as premeditation and that those circumstances would constitute first-degree murder in Florida. Appellant then said that it was "self-defense if I did it."

Appellant later told the investigators that he made up the story about Little Texas. Appellant maintained that he could not fight back when Johnson was punching him because of a cast on his hand and that he pushed Johnson onto a "little stool" or ottoman and shot him. Appellant also claimed that Johnson was reaching for a gun. According to Appellant, "[Y]es, I did shoot him . . . but it was self-defense." Appellant testified that he did not leave and retrieve a gun from his car because he always carried a gun.

Appellant relied on self-defense at trial and, therefore, was required to prove that his use of deadly force was immediately necessary. Appellant's testimony at trial was consistent with the last part of his statement to the investigators in Florida. He testified that he and Johnson had been arguing over who had the better crack cocaine. Appellant carried a loaded gun and kept a bullet in the chamber, and Appellant knew that Johnson always carried a gun. Appellant testified that, when he saw Johnson reaching for a gun, he pulled out his own gun and shot Johnson; he believed that Johnson was going to shoot him.

The State, however, called several eyewitnesses—each of whom testified that Appellant left after the initial argument, returned a short time later, shot and killed Johnson, and left without saying anything. According to the eyewitnesses' testimony, Johnson was unarmed and put his arms up in front of his face when Appellant began firing. The paths of the bullets in his arm were consistent with Johnson putting his arm up in a defensive position. The jury was charged on the

offense of murder as well as the lesser included offenses of manslaughter and aggravated assault. The jury found Appellant guilty of murder.

In his first two issues on appeal, Appellant contends that the trial court committed reversible error when it denied his motion to suppress the recorded statements that he gave to law enforcement officials in Florida. We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011). When we review a ruling on a motion to suppress, we apply a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010). We afford almost total deference to the trial court's determination of historical facts. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* In addition, we review de novo the trial court's application of law to facts. *Hubert*, 312 S.W.3d at 559; *Valtierra*, 310 S.W.3d at 447. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Valtierra*, 310 S.W.3d at 447–48.

In his first issue, Appellant specifically complains that his statements were not admissible because they were not taken in compliance with Article 38.22 of the Texas Code of Criminal Procedure. Article 38.22 controls the admissibility of custodial statements in a criminal trial, and Section 3 requires that the accused be given certain warnings "prior to the statement but during the recording." TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(2) (West Supp. 2014). Whether the requirements of Article 38.22 were satisfied in this case is an application-of-law-to-fact question. *Gonzales v. State*, 190 S.W.3d 125, 129 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Accordingly, to make this determination, we view the evidence in the light most favorable to the trial court's ruling and review de novo the trial court's resolution of the question. *Id.*

The evidence shows that, after a warrant was issued in Midland for Appellant's arrest, Appellant and Powell were apprehended in a Florida motel room by U.S. Marshals. They were held by the Seminole County Sheriff's Office. Investigator Jaynes testified that he advised Appellant of his *Miranda*[2] rights by reading each of the rights reflected on a card that Appellant eventually signed.

Specifically, Appellant complains that his statement was involuntary because he was not informed that, "if you cannot afford an attorney, one will be appointed for you." Appellant argues that the video does not show that the warning was given, that it was undisputed that Appellant did not read the written warnings, and that Investigator Jaynes "admitted [that] he did not orally advise Appellant of [his right to appointed counsel] before turning the video recording on." The State disagrees and directs us to the record where Investigator Jaynes testified that he started giving the *Miranda* warnings before the recording began.

We have reviewed Investigator Jaynes's testimony, and it is clear that, before he took Appellant's statement, he informed Appellant that, if he could not afford an attorney, one would be appointed. It is equally clear that Investigator Jaynes did not give Appellant that warning after he started the video. In other words, even though Appellant received the warning and even though he acknowledged that fact in writing, the warning does not appear on the video. Section 3 of Article 38.22 requires that warnings be given "prior to the statement but during the recording." CRIM. PROC. art. 38.22, § 3(a)(2).

However, Section 8 of Article 38.22 provides that a statement obtained in another state is admissible as long as it was obtained in compliance with the laws of that state. *Id.* art. 38.22, § 8(1). Florida does not have a confession statute like Article 38.22; instead, the admissibility of custodial statements is grounded in the Supreme Court's decision in *Miranda*, 384 U.S. at 479. *See Welch v. State*, 992

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

So.2d 206, 214 (Fla. 2008). Investigator Jaynes testified that he is not required by Florida law to record either the statement or the warnings, and Appellant does not challenge that testimony.

When we consider the evidence in the light most favorable to the trial court's ruling, we must conclude that Investigator Jaynes warned Appellant of his *Miranda* rights and that Investigator Jaynes, therefore, obtained Appellant's statement in compliance with the laws of the state of Florida. Thus, it was not error to admit Appellant's statements over his Article 38.22 objection. Appellant's first issue is overruled.

In his second issue, Appellant alleges that his recorded statement was inadmissible because it was coerced and, therefore, involuntary. We will uphold a trial court's finding of voluntariness unless it is clearly erroneous. *Meekins v. State*, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011). A ruling is "'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). The prevailing party "is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *Meekins*, 340 S.W.3d at 460 (quoting *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)).

It is well settled that a statement is involuntary if it was extracted by threats of violence or obtained by direct or implied promises or by the exertion of improper influence. *Martinez v. State*, 127 S.W.3d 792, 796 (Tex. Crim. App. 2004). A threat to arrest or a promise to free a relative in exchange for a statement may render the statement inadmissible at trial. *Roberts v. State*, 545 S.W.2d 157, 161 (Tex. Crim. App. 1977). "However, where no express or implied promise or

threat is made by the police, a prisoner's belief that his cooperation will benefit a relative will not render the prisoner's subsequent confession inadmissible in evidence." *Id.* Furthermore, when a prisoner has created conditions that place an innocent relative under suspicion and the prisoner desires to extricate the relative from this position by making a confession that is self-motivated, that action may be deemed to be voluntary, thereby rendering the statement admissible. *Id.*

Appellant contends that his statement was involuntary because "the logical inference" to be drawn from his interview with Investigator Jaynes was "that Appellant was informed [Powell] would stay in jail unless he answered the questions and allowed himself to be interrogated by the Florida detectives." The State argues that there was no evidence of an implied or express promise or threat and that Investigator Jaynes did not inform Appellant "about [Powell's] custody or arrest status" or discuss an exchange for her release.

We have reviewed the interview between Investigator Jaynes and Appellant. It is clear from their exchange that Investigator Jaynes did not promise to release Powell in exchange for Appellant's statement or threaten to imprison Powell unless Appellant gave a statement. In fact, Investigator Jaynes specifically told Appellant that he would be sent to jail to await extradition to Texas regardless of whether he gave a statement. At trial, Appellant testified, "I wouldn't say [I was] threatened, but I was worried about her is the only reason I gave the statement."

Investigator Jaynes was under a duty to determine whether there was evidence to hold or to release Powell, but it was Appellant who brought up Powell's name at various times during the interview. Accordingly, we conclude that the trial court did not abuse its discretion when it concluded that Appellant's recorded statement was voluntary and admitted it into evidence. Appellant's second issue is overruled.

In his third and fourth issues on appeal, Appellant challenges the admissibility of two extraneous offenses. Whether evidence of an extraneous offense has relevance apart from showing character conformity is a question for the trial court that we review for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). We will uphold the trial court's ruling as long as it is within the zone of reasonable disagreement and correct under "any theory of law applicable to that ruling." *Id.* at 343–44; *see also Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).

The general rule is that a defendant is to be tried only for the offense charged, not for any other bad acts or for being a criminal generally. *Segundo v. State*, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008). However, in a direct evidence case such as this, evidence of an extraneous act of misconduct may be admissible if the uncharged act is relevant to a material, non-propensity issue that is contested in the case and if the probative value of that evidence is not significantly outweighed by the potential danger of unfair prejudice. *Id.*

In his third issue, Appellant challenges the admissibility of evidence showing that Appellant, while awaiting trial in this case, threatened one of the State's witnesses, Felix Barron Hall, who was also in jail. Hall testified that he and Appellant were in separate "tanks" but that he could see Appellant through a window. Hall said that Appellant raised his hand, pointed it toward the sky, pulled his finger down like a trigger, and mouthed, "You're next." At trial, Appellant claimed that he did not know Hall well enough to recognize him.

Appellant argues that this evidence was not admissible as proof of motive or intent under any of the exceptions to Rule 404(b) of the Texas Rules of Evidence "because Appellant admitted [that] he intentionally shot Jeremy Johnson." The Court of Criminal Appeals, however, has concluded that "criminal acts that are designed to reduce the likelihood of prosecution, conviction, or incarceration for

the offense on trial are admissible under Rule 404(b) as showing 'consciousness of guilt.'" *Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App. 1994). Such acts include threats against witnesses. *Id.* (citing *Rodriguez v. State*, 577 S.W.2d 491, 492–93 (Tex. Crim. App. [Panel Op.] 1979)). Here, evidence that Appellant mouthed, "You're next," while gesturing as if he were pulling the trigger of a gun was relevant to show consciousness of guilt.

Appellant argues that the probative value of this evidence is reduced by remoteness in time and cites *Clark v. State*, 693 S.W.2d 35 (Tex. App.—Houston [1st Dist.] 1985), *pet. ref'd*, 718 S.W.2d 708 (Tex. Crim. App. 1986). In *Clark*, the defendant was accused of digitally penetrating a sleeping child, and he maintained that the child had dreamed about the assault. *Id.* at 36. The trial court allowed the defendant's stepdaughter to testify about two instances of alleged abuse that occurred approximately eleven years and two years before trial. *Id.* On appeal, the court concluded that evidence of the extraneous offenses was not admissible under the exceptions to Rule 404(b) and that, even if admissible, the probative value of such evidence would have been outweighed by the "remoteness in time of the prior unreported incidents." *Id.* at 37.

We find *Clark* to be distinguishable. The extraneous offense in this case did not occur prior to the charged offense; therefore, remoteness is not an issue. Evidence that an accused committed an extraneous offense—while awaiting trial for the charged offense—that was designed to prevent prosecution or conviction of the charged offense is not evidence of character conformity. Instead, it is evidence of consciousness of guilt. We cannot conclude that it was an abuse of discretion to admit evidence that Appellant threatened a witness against him while awaiting trial. Appellant's third issue is overruled.

In his fourth issue, Appellant argues that the trial court erred when it admitted evidence that, two weeks before Appellant killed Johnson, Appellant

pointed a gun at two of the eyewitnesses to the Johnson shooting. Christopher Jeremy Jordan (Chris) testified that, on that earlier occasion, Appellant parked his Tahoe outside Deborah's house. Appellant and Powell were sitting in the vehicle. Chris stood outside the vehicle and talked to Appellant and Powell. As he was talking to them, Appellant retrieved a gun from under the seat of his vehicle and pointed it at Chris's two brothers, Kenneth and Harvey; they were sitting in the front yard, unarmed. When Chris saw the gun, he "stepped out [of] the way." Chris said that Appellant put the gun back under the seat and drove away without saying anything. Kenneth Conner testified to the same facts.

During their interview with Appellant, Florida officials asked him whether he had pulled a gun on one of the eyewitnesses and the eyewitness's brother three weeks earlier because Appellant thought that they had stolen some of his property. Appellant did not expressly deny the assault in his statement but said generally that he did not trust what any of the witnesses said about him. At trial, Appellant testified that he did not pull a gun on Chris, Harvey, or Kenneth.

Appellant argues that this evidence was not admissible under any of the exceptions to Rule 404(b) and that any probative value was substantially outweighed by prejudice. The State argues that Appellant's assertion of self-defense put motive and intent in issue and "allowed the State to rebut the defense with evidence of other crimes, wrongs, or acts, or evidence of violent acts where Appellant was the aggressor." We agree with the State that motive and intent were contested issues because Appellant claimed that Johnson was the aggressor and that he killed Johnson in self-defense. *See Rodriguez v. State*, 486 S.W.2d 355, 358 (Tex. Crim. App. 1972).

Although not an exclusive list, evidence of an extraneous offense may be admissible as proof of motive, intent, knowledge, identity, or absence of mistake or accident. TEX. R. EVID. 404(b). Evidence of an extraneous offense that is offered

to show motive "must fairly tend to raise an inference in favor of the existence of a motive on the part of the accused to commit the alleged offense for which he is on trial." *Rodriguez*, 486 S.W.2d at 358. Here, the record shows that Appellant thought Harvey and Kenneth had stolen his property and that he pulled his gun, aimed the gun at the brothers, and drove away without saying a word. The events leading up to the charged offense in this case began when Appellant and Johnson disagreed about whose drugs were the best, and Appellant was "insanely pissed off." Although others testified that Johnson slapped Appellant with an open hand, Appellant claimed that Johnson "punched" him. After leaving the house, Appellant retrieved his gun, returned, shot and killed Johnson, and left without saying a word. Thus, the extraneous offense was relevant and was admissible to show that Appellant and Johnson had been in an argument over drugs, that Appellant was "insanely pissed off," and that Appellant therefore had a motive to kill Johnson. *See* TEX. R. EVID. 404(b). Motive became an issue when Appellant raised the issue of self-defense. *Halliburton v. State*, 528 S.W.2d 216, 218 (Tex. Crim. App. 1975).

Additionally, in order to establish intent and to rebut a defendant's claim of self-defense, the State may introduce evidence of prior violent acts where the defendant was the aggressor. *Id.*; *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). In this case, the fact that Appellant pulled a gun and pointed it at the brothers because he thought they had stolen his property demonstrated an act of violence where Appellant was the aggressor. *See Lemmons v. State*, 75 S.W.3d 513, 523–24 (Tex. App.—San Antonio 2002, pet. ref'd) (proving that accused had broken into homes, tied up the victims, and stolen cars and money at gunpoint demonstrated acts of violence where the accused was the aggressor in prosecution for murder). The testimony, if believed by the jury, was

relevant to show both motive and intent and to rebut Appellant's claim of self-defense.

Although relevant, we must also consider whether the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. To evaluate the admissibility of evidence in light of a Rule 403 objection, courts must balance "probative value" against any tendency of the evidence to suggest a decision on an improper basis, to confuse or distract the jury from the main issues, to be given undue weight by a jury, or to consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

We have already determined that the evidence is relevant, but "probative value" as used in Rule 403 "means more than simply relevance." *Id.* at 641. We assess the probative value of evidence by considering both its inherent probative force and the proponent's need for that item of evidence. *Id.* The probative force of evidence depends on "how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation." *Id.* As important measures of probative force, we consider the closeness in time, the presence of similarities between the charged and the extraneous offense, and the strength of the evidence to prove the extraneous offense. *Montgomery*, 810 S.W.2d at 390; *Robinson v. State*, 701 S.W.2d 895, 898 (Tex. Crim. App. 1985).

There are three inquiries in assessing the proponent's need: (1) whether the fact of consequence that the extraneous offense is relevant to prove is in dispute, (2) whether the proponent has other evidence to establish the fact of consequence at issue, and (3) the strength of that evidence. *Montgomery*, 810 S.W.2d at 390. "Where there is little or no controverting evidence offered by a defendant, it is clear that the use of an extraneous offense is unnecessary and offers virtually no probative value." *Robinson*, 701 S.W.2d at 898. "However, the presence of some

controverting evidence will enhance the probative value, including those cases where the controverting evidence is presented in the form of a defensive theory." *Id.* at 899. "When the proponent has other compelling or undisputed evidence to establish the proposition or fact that the extraneous misconduct goes to prove, the misconduct evidence will weigh far less than it otherwise might in the probative-versus-prejudicial balance." *Montgomery*, 810 S.W.2d at 390.

Here, the fact of consequence was whether Appellant intentionally shot and killed Johnson after retrieving his gun or whether he acted in self-defense in response to Johnson reaching for his weapon. The extraneous assault occurred two weeks prior to the shooting, and the similarities between the charged and the extraneous offense make it more probable that Appellant pulled his gun first in this instance. Kenneth and Chris testified that Appellant pulled a gun from beneath his seat, pointed it at the unarmed men, and drove away without saying a word. This testimony was offered to show that Appellant left after the altercation with Johnson, returned a short time later, and shot Johnson without saying a word. The probative force of this evidence lies in showing that Appellant used guns to resolve conflicts.

The State's need for the evidence was more than merely minimal. Whether Appellant acted in self-defense or left and later returned to the scene was unquestionably in dispute. Although the State had several eyewitnesses, Appellant vigorously challenged the bias and credibility of each witness. Appellant sought to establish that some of the witnesses were under the influence of alcohol, that some witnesses were under the influence of marihuana, and that some witnesses were under the influence of crack cocaine. In addition, Appellant testified that the eyewitnesses were friends with Johnson, not Appellant. Although there was evidence of flight after the commission of the offense, Appellant claimed that he left because he was receiving death threats and not because he was running from

law enforcement. When the State offered Hall's testimony to show that Appellant threatened a witness, Appellant contended that he did not know Hall well enough to recognize him.

After considering the similarities between the offenses, the close proximity in time, and the fact that Appellant controverted the State's evidence through cross-examination, we conclude that the probative value of the extraneous assault was high. Our next step is to determine whether the probative value is substantially outweighed by the danger of unfair prejudice.

Whether evidence is unfairly prejudicial turns on the potential it has "to impress the jury in some irrational but nevertheless indelible way." *Montgomery*, 810 S.W.3d at 390. "This is often a function of the nature of the misconduct." *Id.* The Court of Criminal Appeals has recognized the inherent prejudicial effect of extraneous offense evidence. *Robinson*, 701 S.W.2d at 899. The court has also explained that offering the extraneous offense as a transaction rather than a criminal offense and instructing the jury on the limited use of extraneous offense evidence will lessen the prejudice. *Id.*

We recognize the inherent prejudice in offering evidence that Appellant pointed a gun at two unarmed men, but the evidence was offered as a transaction and not a criminal offense. Chris testified that he never reported the incident to the police, and there was no evidence that Appellant was charged with a crime as a result. In fact, the defense relied on the fact that it was never reported to support its position that it never happened. The State merely argued that the transaction was probative of Appellant's intent and evidence of an act of violence where he was an aggressor. Moreover, the jury was instructed not to consider evidence of other crimes or bad acts for any purpose unless the jury believed beyond a reasonable doubt that Appellant committed the acts. The jury was further instructed that it could consider such evidence for the limited purpose of

determining Appellant's motive and mental state. Appellant did not object to the form of the jury instruction during the charge conference. After considering the instruction to the jury and the fact that the offense was introduced as a transaction rather than an offense, the prejudicial effect of the extraneous transaction was low.

Given the probative value of the extraneous transaction and its low prejudicial effect, we must conclude that the trial court's admissibility ruling was within the zone of reasonable disagreement and that it was not an abuse of discretion to admit the extraneous offense evidence. Appellant's fourth issue is overruled.

In his fifth issue, Appellant complains that the trial court erred when it overruled his *Batson* challenge. To review a trial court's ruling on a *Batson* challenge, we examine the evidence in the light most favorable to the ruling and determine whether the record supports the findings as a whole. *See Keeton v. State*, 749 S.W.2d 861, 870 (Tex. Crim. App. 1988). Our review of the record is "highly deferential" to the trial court. *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). We reverse a trial court's ruling on a *Batson* challenge only if it is clearly erroneous. *Whitsey v. State*, 796 S.W.2d 707, 721 (Tex. Crim. App. 1989). Although there may be evidence to support the ruling, it is clearly erroneous if, after reviewing the record as a whole, we are "left with the definite and firm conviction that a mistake has been committed." *Anderson*, 470 U.S. at 573 (quoting *U.S. Gypsum*, 333 U.S. at 395).

A proper *Batson* challenge involves three steps. To challenge the State's use of peremptory strikes, a defendant must first make out a prima facie showing of purposeful discrimination by offering facts and other relevant circumstances to raise an inference that the prosecutor exercised its peremptory strikes to exclude potential jurors on account of their race, ethnicity, or gender. *Batson*, 476 U.S. at 96; *Guzman v. State*, 85 S.W.3d 242, 245 (Tex. Crim. App. 2002). Once the trial

court determines that the defendant has made a prima facie showing, the burden of production shifts to the proponent of the strike to offer "a neutral explanation for the challenges" in order to rebut the prima facie showing of discrimination. *Keeton v. State*, 724 S.W.2d 58, 65 (Tex. Crim. App. 1987); *see also Batson*, 476 U.S. at 97–98. A neutral explanation "means an explanation based on something other than the race of the juror." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). If the State offers facially valid explanations for its strikes, it has rebutted the presumption of purposeful discrimination. *Williams v. State*, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991). The opponent of the strike has an opportunity to show that the proffered explanations were pretext. *Id.* In the final step, the trial court must "determine whether despite the State's explanation, the defendant has established purposeful discrimination." *Keeton*, 724 S.W.2d at 65; *see also Guzman*, 85 S.W.3d at 254.

To determine whether the explanation is pretext for discrimination, courts consider the following factors: (1) whether the reason is related to the case, (2) the amount of meaningful questioning to the challenged juror, (3) disparate treatment of similarly situated jurors, and (4) disparate examination of the venire. *Holt v. State*, 912 S.W.2d 294, 297–98 (Tex. App.—San Antonio 1995, pet. ref'd). After considering the credibility of the prosecutor, the content of the explanation, and any rebuttal evidence or argument offered by the defendant, the trial court must make a finding of fact concerning purposeful discrimination to which we afford "great deference." *Keeton*, 724 S.W.2d at 65.

Before the jury was seated, Appellant objected to the State's use of its peremptory strikes to exclude three Hispanic members of the venire. The trial court found that Appellant made the requisite prima facie showing of discrimination and asked the State for a race-neutral explanation. The State explained that it struck two of the jurors because of their age and lack of education

and the third due to a lack of information because she had failed to fill out a juror information card. After providing an opportunity for additional argument, the trial court denied the challenge and found that "the State has overcome any prima facie case made by the Defense."

On appeal, Appellant maintains that the State failed to overcome Appellant's prima facie showing because age is not a race-neutral reason, because the failure to fill out the juror information card is not sufficient without an inquiry into the information that is lacking, and because a lack of education is not a race-neutral reason without an additional showing. Appellant cites *Chivers v. State* for the proposition that a lack of education "is an insufficient race-neutral reason without a showing on the record of such venireman's lack of intelligence." *See Chivers v. State*, 796 S.W.2d 539 (Tex. App.—Dallas 1990, pet. ref'd).

The Supreme Court has rejected this argument and clarified that the second step of a *Batson* challenge "does not demand an explanation that is persuasive, or even plausible," because "the issue is the facial validity of the prosecutor's explanation." *Purkett v. Elem*, 514 U.S. 765, 767–68 (1995) (second quotation quoting *Hernandez*, 500 U.S. at 360); *see also Whitfield v. State*, 408 S.W.3d 709, 715–16 (Tex. App.—Eastland 2013, pet. ref'd). A "'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection." *Purkett*, 514 U.S. at 769. The Court of Criminal Appeals has explained that the burden that shifts between the opponent and the proponent of the strike is the burden of production; the opponent of the strike must produce sufficient evidence to establish a prima facie case, and the burden shifts to the proponent to offer a race-neutral explanation. *Ford v. State*, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999). The court further instructed:

> If a race-neutral explanation is proffered, then the third step occurs: the trial court must decide whether the opponent of the strike has proved purposeful racial discrimination. This is the step regarding the

burden of persuasion. The Supreme Court stressed that the "ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."

*Id.* (quoting *Purkett*, 514 U.S. at 767–68). To sustain the burden of persuasion, the opponent of a strike must show that the reasons offered were pretext or were not race neutral, "thus rebutting any race neutral explanation given at the *Batson* hearing." *Williams*, 804 S.W.2d at 101.

The State's reasons for the strikes—age, lack of education, and failure to complete the juror information card—were race-neutral on their face. *See Purkett*, 514 U.S. at 768 ("Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." (quoting *Hernandez*, 500 U.S. at 360)); *see also Whitsey*, 796 S.W.2d at 716 (indicating that age is a nondiscriminatory reason for striking a panelist); *Holt*, 912 S.W.2d at 300–01 (stating that lack of education is a race-neutral explanation for a peremptory strike). This rebutted the presumption of purposeful discrimination created by the prima facie showing and satisfied the State's burden to articulate a reason for the strike that was neutral on its face. *See Williams*, 804 S.W.2d at 101. Therefore, the burden shifted back to Appellant to rebut the State's explanations or to show that the explanations were merely pretext. *Id.*

To establish pretext, the Court of Criminal Appeals has urged parties to compare and point out discrepancies between the proffered reasons and the questioning of the panel during voir dire to rebut the reason offered for the strike. *Young v. State*, 826 S.W.2d 141, 145–46 (Tex. Crim. App. 1991). In addition to aiding the trial court, such a comparison provides "the appellate court a more accurate picture of the voir dire than a cold record." *Id.* at 146.

Here, the State's reasons for striking the three Hispanic panelists were facially plausible. In response, Appellant simply argued that the State had failed to overcome Appellant's prima facie showing of discrimination. Appellant did not

point out any discrepancies in the reasons given or show that the reasons were merely pretext. When the trial court asked whether there was "[a]nything else from either State or Defense" before it ruled on the *Batson* challenge, neither party made any further arguments. Appellant relied solely upon the fact that three Hispanic members of the venire were peremptorily challenged and identified no other facts or circumstances to support his claim of discrimination. He did not cross-examine the prosecutor, present any evidence to otherwise refute the State's explanations, or ask for the opportunity to do so. In fact, Appellant expressly declined when given the opportunity to do so.

After reviewing the record, we must conclude that Appellant failed to carry his burden to rebut the State's explanation or to establish that the reasons were merely pretext for purposeful discrimination. *See Ford*, 1 S.W.3d at 694. The facially plausible reasons articulated by the State were not contradicted. Accordingly, we are not left with the "definite and firm conviction that a mistake has been committed" and cannot conclude that the trial court's ruling was clearly erroneous. *See Hill v. State*, 827 S.W.3d 860, 865 (Tex. Crim. App. 1992) (quoting *United States v. Fernandez*, 887 F.2d 564, 567 (5th Cir. 1989). Appellant's fifth issue is overruled.

We affirm the judgment of the trial court.

JIM R. WRIGHT

CHIEF JUSTICE

January 15, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.