Donald J. ROBINSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 61767.

Court of Criminal Appeals of Texas, En Banc.

Oct. 23, 1985.

Rehearing Denied Jan. 22, 1986.

Lawrence B. Mitchell, on appeal only, Richard Alan Anderson, on appeal only, Dallas, for appellant.

Henry Wade, Dist. Atty., and W.T. Westmoreland, Jr., Richard Worthy and Richard Zadina, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., and Alfred Walker, First Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING

CAMPBELL, Judge.

Appellant was convicted by a jury of third degree felony theft of property of the value of $200 or more but less than $10,000.[1] The jury assessed punishment at four years confinement in the Texas Department of Corrections. In his direct appeal to this Court, we originally reversed appellant's conviction based on the admission in evidence of an extraneous offense during the guilt-innocence stage of the trial. We granted the State leave to file motion for rehearing. We will withdraw our opinion on original submission, but we will reverse the judgment of the trial court, based on improper jury argument.

### I. Admissibility of Extraneous Offense.

In his first ground of error, appellant claims the trial court erred in admitting evidence of an extraneous offense over his objection. The admissibility of an extraneous offense is controlled by a two-step test:

"First, it must be determined that the extraneous offense evidence is relevant to a material issue in the case other than defendant's character. [footnote omitted]. Second, the evidence must possess probative value which outweighs its inflammatory or prejudicial effect." Plante v. State, 692 S.W.2d 487, 491 (Tex.Cr.App.1985), citing, Williams v. State, 662 S.W.2d 344 (Tex.Cr.App.1983).

Prior to the elucidation of this test in Williams, a list of exceptions found in Albrecht v. State, 486 S.W.2d 97, 100–101 (Tex.Cr.App.1972) was thought to be all inclusive in determining when an extraneous offense was admissible. Williams, supra, at 346. However, that notion was based on the use of the analytical framework in Albrecht, supra, for examining the admissibility of an extraneous offense. It is clear, therefore, that the two-part test in Williams, supra, controls the admissibility of extraneous offenses.

We will now determine the admissibility of the extraneous offense by examining the surrounding facts and applying them to each prong of the two-part test.

---

1. V.T.C.A. Penal Code, art. 31.03(a), 31.03(d)(4)(A). The dollar amount was amended in 1983 to raise the minimum from $200 to $750.

## A. *Facts*

Appellant, an attorney, was charged with theft of two diamond rings from his client, Verza Jones, who he was representing in a lawsuit for a contingent fee. Jones, the owner of the rings, testified that, as the lawsuit progressed, she ran short of funds. Jones approached appellant and asked for help in having two diamond rings appraised and, if she later agreed, in finding a buyer. The appellant accepted the rings for that purpose but later, sometime around September of 1976, sold the rings for his own benefit.

The appellant presented evidence through the testimony of his ex-wife and common law wife that it was he, rather than Jones, who had run short of funds. When he told Jones that "he just didn't know how long he could stick it out," the client allegedly said, "I have got two rings that I never wear and maybe I could put those in your pot and that would help you out." The appellant's witnesses then testified that he accepted the rings and appropriated them for his own use with Jones knowledge and consent. Evidence also showed that appellant later attempted to include the cost of returning the rings as part of a settlement on his client's lawsuit. The State impeached the ex-wife's testimony with an earlier recorded conversation that took place with the prosecutor at his office.

Over objection, the trial court admitted rebuttal evidence by the State of an extraneous transaction between the appellant and William Ross, another client.[2] In March of 1976, Ross was in need of cash and wanted to sell part of a box in Texas Stadium. Appellant proposed to sell the box for $50,000 as a joint venture comprising appellant, Ross and several other people. Ross executed some blank documents of transfer and received a $3,000 down payment. Ross later discovered that appellant sold the box to an advertising company. Ross never received any payment for

the sale and did not give appellant permission to retain any money from the sale. Appellant later billed Ross for the service and other alleged services in the amount of $80,200.

## B. *Relevancy To A Material Issue In The Case Other Than Defendant's Character*

As part of a list of exceptions to the normal exclusion of extraneous offenses from use at trial, this Court has recognized that an extraneous offense is admissible to rebut a defensive theory that places a material element of the charged offense at issue. *Albrecht,* supra at 101. However, as noted earlier, the list of exceptions was only approved with the understanding that the transaction must be relevant to a material issue in the case other than defendant's character and must contain more probative value than prejudicial effect. *Williams,* supra. We will therefore determine whether the extraneous transaction was relevant to any material issue in the case other than appellant's character.

Appellant was charged with unlawfully appropriating property with the intent to deprive the owner of the property. V.T. C.A. Penal Code, § 31.03(a). A person unlawfully appropriates property if it is done without the owner's effective consent. Id., at § 31.03(b)(1). Finally, consent is not effective if induced by deception. Id., at § 31.01(4)(A). The presence or absence of deception clearly is a material issue to a prosecution for theft under this statute. Thus, the question is whether use of the extraneous offense was relevant to a determination of the presence or absence of deceptive intent on the part of appellant.

The extraneous offense was offered as rebuttal evidence of appellant's intent to deprive Jones of her property through deception. This Court has recognized that the prior act of a person may well be relevant in determining intent under sim-

---

**2.** The State argued that the extraneous offense was admissible "to show [appellant's] intent, scheme and design thereby rebutting the defensive theory" (punctuation sic). Although the phrasing is cumbersome and overinclusive, it is

clear from the record that the State intended to use the extraneous offense as rebuttal evidence to appellant's defensive theory that he simply did not have the same understanding of the transfer of the rings as his client.

ilar reoccurring circumstances. This acceptance of the relevancy of an extraneous offense for proof of intent is based on: "the doctrine of chances—the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all. Without formulating any accurate test, and without attempting by numerous instances to secure absolute certainty of inference, the mind applies this rough and instinctive process of reasoning, namely, that an unusual and abnormal element might perhaps be present in one instance, but that the oftener similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them." 2 Wigmore, *Evidence*, § 302 (Chadbourn rev.ed. 1979). See also, *Plante v. State*, 692 S.W.2d 487, 491–92 (Tex.Cr.App.1985).

We find, therefore, that the presence or absence of deceptive intent was a material issue in the case and that introduction of the extraneous offense was relevant to the determination of that issue.

### C. *Probative Value v. Prejudicial Effect*

Having found that the first prong of the two-part test was properly applied, we now proceed to examine the second prong and determine whether the probative value outweighs the prejudicial effect.

#### 1. *Probative Value*

This Court has used several factors to measure the probative value of an extraneous offense. We will examine each factor for determination of the probative value.

Presence of similarity between the prior act and the offense charged has been an important measure of probative value. *Plante*, supra at 492 ("there must be similarity in the various instances in order to give them probative value"), quoting 2 Wigmore, *Evidence*, § 302 (Chadbourn rev.ed. 1979); *Williams*, supra at 347 ("uniquely similar actions").

The extraneous offense used at the instant trial as proof of appellant's intent is highly similar in nature to the offense for which he was tried. The extraneous offense and the charged offense both involved an attorney-client relationship. In both cases, the clients were financially in trouble. In both cases, the client transferred a piece of property to appellant for a sale which would benefit the client. In neither case was the transfer initially used as consideration for attorney's fees. In both cases, the property was sold by appellant without the client's effective consent, the funds being retained by appellant. In both cases, evidence of appellant's use of deception to obtain initial possession of the property was present. And, in both cases, appellant later attempted to justify his continued retention of the property as payment for his services. Such close factual similarity lends substantial probative value to extraneous transaction.

A second factor used to measure probative value is closeness in time of the extraneous transaction to the charged offense. *Plante*, supra at 495 (18 months too remote); *McDonald v. State*, 513 S.W.2d 44, 52 (Tex.Cr.App.1974) (one year not too remote). In the instant case, the two transactions were separated by approximately six months, although the time may have been as little as four months. We find the two transactions were sufficiently close in time to have provided additional probative value.

■ A third factor used to measure probative value is the availability of alternative sources of proof. *Morgan v. State*, 692 S.W.2d 877, 880, n. 4 (Tex.Cr.App.1985) ("... value must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference"), quoting *United States v. Beechum*, 582 F.2d 898, 914 (5th Cir.1978). This factor is perhaps the most troublesome ingredient of probative value. Where there is little or no controverting evidence offered by a defendant, it is clear that the use of an extraneous offense is unnecessary and offers virtually no probative value. *Prior v. State*, 647 S.W.2d 956, 959 (Tex.Cr.App.1983)

(where defendant made no claim of accident, evidence of intent could clearly be inferred without the necessity of an extraneous offense as proof). However, the presence of some controverting evidence will enhance the probative value, including those cases where the controverting evidence is presented in the form of a defensive theory. See *Albrecht,* supra at 101, n. 6.

In the instant case the State introduced strong direct evidence that appellant intended to appropriate Jones' property without her effective consent. Appellant vigorously tested the State's case through cross-examination of Jones. Appellant then offered direct evidence through his ex-wife and present wife, providing an entirely different version of the transfer of the rings. In doing so, appellant presented a viable defensive theory explaining his intent, thereby controverting the State's theory that Jones was deceived. Given such a defensive theory of mistake, misunderstanding or outright conflict, the issue of intent was clearly joined.

The issue became clearer when a signed receipt was introduced by the State in its case-in-chief. The receipt shows that transfer of the diamonds was for the purpose of appraisal and that the gems would be returned at the client's written request. This receipt was only inferrentially controverted by appellant's defensive theory. Because of the damaging nature of the receipt, the probative value of the extraneous offense was somewhat lessened. However, it did retain some probative value.

Taking into account the various factors of strong similarity, close proximity in time, and the presence of some controverting evidence in the form of cross-examination and defensive theory, we find that the extraneous transaction had probative value as to appellant's intent to deceive Jones. We now must measure the prejudicial effect.

## 2. *Prejudicial Effect*

We have often noted the inherent prejudicial effect of using extraneous offenses. Prejudice arises "since the accused has no notice he will be called to defend against it, and his 'propensity to commit crimes' is not material to whether he is guilty of the specified conduct which is charged by the State...." *Williams v. State,* supra, at 346 (quoting *Elkins v. State,* 647 S.W.2d 663, 665 (Tex.Cr.App.1983).

The prejudice inherent in the admission of an extraneous offense can be lessened in several ways. We will examine each factor that lessens the prejudice inherent in the use of an extraneous offense.

Introduction of the evidence as a transaction rather than as a criminal offense lessens the prejudicial effect. *Plante,* supra, at 494. The State offered the Ross act as an extraneous transaction. Appellant, through cross-examination, made it clear that no civil or criminal action had resulted from the transaction. The State merely argued that the Ross transaction was probative evidence of appellant's intent to deceive Jones. The State did suggest in argument the possibility of future criminal indictment based on the transaction, but this was in response to appellant's argument that no wrong occurred because no indictment had been pursued. We find the introduction of the act as a transaction lessened the prejudicial effect.

A proper instruction on the limited use of an extraneous offense will also lessen the prejudice. *Plante,* supra. Appellant received an instruction that properly stated the law and referred to the offense only as a transaction. No objection was made by appellant as to its form. The instruction, therefore, lessened the prejudicial effect.

Taking into account the introduction of the offense as a transaction, the proper instruction to the jury, and noninflammatory jury argument, the prejudicial effect of the extraneous transaction was low.

■ Given the probative value of the extraneous transaction and its low prejudicial effect, the extraneous transaction was properly admitted.

## II. *Remaining Grounds of Error.*

In his second ground of error, appellant claims that the trial court should not have

admitted certain reputation testimony at the punishment stage of the trial over his objection. Article 37.07, § 3(a), V.A.C.C.P., allows the State or the defendant to offer evidence as to "prior criminal record of the defendant, his general reputation and his character." Appellant only objected to the question as "improper." [3] Appellant's objection is so general as to amount to no objection at all. *Russell v. State,* 468 S.W.2d 373 (Tex.Cr.App.1971). The second ground of error is overruled.

In his third ground of error, appellant claims the trial court erred in admitting a tape-recorded conversation between the prosecutor and a defense witness, appellant's ex-wife. Appellant argues that the recorded conversation was tainted by prosecutorial misconduct because the State failed to inform the appellant of the existence of the tape and violated an agreement with the defense witness not to reveal the conversation at any time.

■ We find that the State complied with all pre-trial discovery agreements. In addition, the evidence was in no way exculpatory or beneficial to appellant's case. Under these circumstances, the State was not obligated to provide appellant with the tape prior to trial. *Quinones v. State,* 592 S.W.2d 933 (Tex.Cr.App.1980). Appellant argues that he was prejudiced because his knowledge of the tape prior to trial would have given him the option of not offering his ex-wife's testimony. Such a claim of prejudice does not make the tape "material to the defense of the accused" under this Court's prior holdings. *Id.,* at 941.

The State had qualifiedly agreed not to use the conversation at trial if the ex-wife was called as a witness for the State. Appellant called her to testify, thus breaching the agreement. In any event, reversal of the conviction would not be the proper sanction. *Id.,* at 942. We find no merit in the third ground of error.

In his fourth and fifth grounds of error, appellant claims that the trial court should have sustained his objection to jury argu-

ment by the State during the punishment stage. The State, after presenting two reputation witnesses who testified against appellant, argued:

"Now, Ladies and Gentlemen, I will just say this, you may think that the testimony was short from two witnesses that I put on the stand in the punishment stage but I submit to you that their testimony was very, very important for this reason, that those were the only questions I was allowed by law to ask that type of witness and (sic) this part of the trial—."

After defense counsel's objection was overruled, the State continued to argue:

"On the other hand, Mr. Corbitt [defense attorney] could ask these witnesses upon what do they base their statements if he wanted to but no, I submit to you it is a reasonable deduction from the failure to ask those witnesses any questions that the answers would have been adverse to his client—."

Counsel for appellant again objected. The trial court overruled the objection.

■ The State's argument was an invitation for the jury "to speculate about extraneous matters the State is barred from introducing through testimony of its reputation witnesses." *Green v. State,* 679 S.W.2d 516, 518 (Tex.Cr.App.1984); see also *Clemons v. State,* 605 S.W.2d 567, 572 (Tex.Cr.App.1980); *Stearn v. State,* 487 S.W.2d 734 (Tex.Cr.App.1972). The argument was improper. The trial court should have sustained defense counsel's objection.

The State did not present any evidence of previous convictions. Appellant testified, after filing an application for probation, that he had no prior felony convictions. The jury, though authorized to consider probation, refused to recommend probation and sentenced appellant to four years confinement. It is quite possible that the jury refused probation because of speculation as to matters not in the record. *Green,* su-

---

**3.** Appellant also objected to the witness not being qualified to answer but did not appeal that claim.

pra. Therefore, we are unable to say with confidence that the argument was harmless. The State's motion for rehearing is overruled.

The judgement is reversed and the cause is remanded to the trial court.

ONION, P.J., concurs in result.

TEAGUE, J., joins Nos. 4 and 5.

### OPINION JOINING JUDGMENT OF THE COURT

CLINTON, Judge.

The culpable mental state element prescribed by statute for the offense of theft is "intent to deprive the owner of property." V.T.C.A. Penal Code, § 31.03.

On original submission a majority of a Court panel analyzed the factual situation and concluded:

> "In some cases in which intent cannot be inferred from the act itself, extraneous offenses can have high relevancy value. [Citations omitted.] In this case, however, intent was not a contested issue; both the State's and the appellant's evidence was that appellant appropriated the rights with intent to deprive the owner of property. The contested issue was whether the appropriation was lawful, that is, whether it was with the owner's consent. [parenthetical reference omitted.] Since intent was not a contested issue, the value of the evidence of the extraneous offense to prove intent was very low, and the value would not have outweighed its prejudicial effect. [Citation omitted.]"

Judge McCormick dissented without opinion.

In his motion for rehearing the local district attorney asserts the extraneous offense was properly admitted "to show his intent to deprive the owner of the benefits of the property." In a supplemental petition the State Prosecuting Attorney contends the evidence was similarly admissible and also on the issue of "whether he intentionally acted in the knowledge that he did not have the owner's effective consent," or

put another way, "Did the appellant honestly think he had the client's effective consent to appropriate the rings?" Neither representative of the State claims a theory about deception.

Now the majority opinion says that consent is not effective if induced by deception, and no one can dispute that proposition. The majority says abstractly that "deception *clearly* is a material issue to a prosecution for theft under this statute." However, it would not be an issue in a particular case unless raised by evidence. The majority also coins the term *"deceptive intent."* Finally it says the extraneous offense was offered as evidence of "appellant's intent to deprive Jones of her property *through deception."* Draft opinion, p. 4. But we are never informed what the relevant "deception" is—and there are five kinds delineated in V.T.C.A. Penal Code, s131.01(2)—or how and when *"deceptive intent* became a material issue in the case." [1]

Despite efforts to purify them, e.g., *Morgan v. State*, 692 S.W.2d 877 (Tex.Cr.App. 1985), we find waters of the law of extraneous transactions are still murky. See, e.g., *Moore v. State*, 700 S.W.2d 193 (Tex.Cr. App., 1985): a lead opinion by Judge Teague joined by two Judges; three Judges concur in result; one Judge renders an opinion joining in the Judgment of the Court, joined by another; the ninth Judge did not participate. See also *Boutwell v. State*, (Tex.Cr.App., No. 711–83, delivered April 24, 1985): one Judge concurs in result; two Judges dissent; motions for leave to file motions for rehearing granted July 3, 1985. The opinion today may be added to the list.

In other particulars, the opinion is less than clear. Concerning measuring probative value by "availability of alternative sources of proof," Slip opinion, p. 6, take the following comment:

> "However, the presence of some controverting evidence will enhance the probative value, including those cases where

---

1. All emphasis is mine throughout unless otherwise indicated.

the controverting evidence is presented in the form of a defensive theory. See *Albrecht,* supra, at 101, n. 6."

Aside from the inherent ambiguity in the statement, the phrase *"some* controverting evidence" seems to put admission of a extraneous offense at risk when an accused in any slight way raises a modicum of doubt about a small aspect of proof offered by the State.

When it comes to "prejudicial effect," Slip opinion, p. 7, the majority indirectly resorts to an observation initially made in *Crawley v. State,* 513 S.W.2d 62 (Tex. Cr.App.1974).[2] Then the majority finds that jargonizing the Ross affair into "transaction" lessened the conceded prejudicial effect attending admitting it into evidence. With smoke and mirrors the majority would have it that stealing more than fifty thousand dollars from Ross did not prejudice appellant in the eyes and minds and hearts of jurors.

After pages expounding bad law regarding extraneous offenses, misconduct and transactions, the majority ultimately upholds reversal of the judgment of conviction on account of prosecutorial argument having nothing to do with those matters. That most injudicious manner of deciding a cause in this Court today is but a thinly disguised methodolgy to create "precedent" for allowing the camel to come on inside the tent tomorrow.

I join only the judgment of the Court reversing the conviction.

MILLER, J., joins.

---

2. "In fact, acts not amounting to crimes would appear to be less prejudicial to the accused than those constituting criminal offenses." *Id.,* at 65.

The notion was updated in *Plante v. State,* 692 S.W.2d 487 (Tex.Cr.App.1985), and applied to "extraneous debts," at 490, n. 3 and 494.