**Leroy Birdie REVIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–85–0201–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 31, 1986.

Walter J. Pink, Houston, for appellant.

John B. Holmes, Jr., Winston E. Cochran, Jr., Lee Coffee, Harris County Dist. Attys., Houston, for appellee.

Before SAM BASS, COHEN and DUNN, JJ.

## OPINION

DUNN, Justice.

A jury found appellant guilty of aggravated robbery and assessed his punishment at 10 years confinement and a $10,000 fine.

In his first ground of error, appellant contends that the jury's verdict of guilty was so against the great weight and preponderance of the evidence as to be manifestly unjust. Appellant does not challenge the evidence showing that a robbery was committed, but rather bases his complaint upon the discrepancy between his own appearance and the description of the robber given to police investigators at the time of the offense.

■ Although the record clearly indicates that such a discrepancy existed, the proper standard of appellate review is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Carlsen v. State*, 654 S.W.2d 444, 448 (Tex.Crim.App.1983, op. on reh'g). Here, both State's witnesses unequivocally identified appellant at trial as the man who robbed them, although one declined to "put his life on it." It is the function of the jury to determine the weight and credibility of the evidence, *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App.1981), and we have no authority to find, in a criminal case, that the jury's verdict was against the great weight and preponderance of the evidence.

Appellant's first ground of error is overruled.

In his final ground of error, appellant claims that the trial court should have sustained his objection to the State's jury argument during the punishment stage of trial. The State does not reply to this ground of error.

At punishment, the State presented four reputation witnesses who testified against appellant. All four witnesses indicated familiarity with appellant's reputation for being peaceful and law-abiding, and stated that his reputation in the community was bad. The State presented evidence of one previous conviction, for which appellant received probation.

Houston Police Sergeant Thomas Roman testified that he worked in the Internal Affairs division, and had previously worked in the robbery division. Raymond Graham testified that he was the general manager of Graham's Men's Wear, and that he was also affiliated with "a police agency." He stated that he had met appellant at the Sheriff's department.

Jerry Coy testified that he met appellant on May 27, 1983, around 5:00 p.m., at Graham's Men's Wear when appellant and another person entered the store. William Clark testified that he met appellant on June 20, 1983, around 3:00 p.m., at the Men's Wearhouse where Clark worked. Clark stated that appellant had "an accomplice witness" at that time, and appellant promptly objected to any reference to an "accomplice". As the State concedes with commendable candor, "[t]here was at least a significant risk that the jury would infer from Coy's and Clark's testimony that the appellant had been involved in some extraneous criminal conduct. Probably the risk of suggesting this extraneous misconduct outweighs any aid to the jury in having a couple of people discuss the appellant's reputation." The risk was increased by the prosecutorial gambit of having Coy and Clark testify to the exact date, hour, and

approximate minute that they met appellant in retail stores.

After presenting these witnesses, the following occurred during final argument:

MR. COFFEE (PROSECUTOR):

The important thing there is not what questions Mr. Pink asked on cross examination, but what questions he did not ask on cross examination.

MR. PINK: Again, Your Honor, I'd like to object. It's improper inferences, inviting the jury to improperly speculate.

THE COURT: Sustained.

MR. PINK: I'd ask the Court to ask the jury to disregard.

THE COURT: Overruled. Go ahead.

MR. COFFEE: I cannot ask those witnesses, well—

MR. PINK: Again, Your Honor, it's unsworn testimony. He cannot—the prosecutor cannot testify at this time.

THE COURT: Overruled. Go ahead and finish your statement.

MR. COFFEE: I cannot ask those witnesses, well, how do you know his reputation is bad. I can't do that.

Mr. Pink had an opportunity to do that and he chose not to.

MR. PINK: Again, may I have a running objection as to what the unsworn testimony by the prosecutor as to what he can do in the trial and what he cannot do?

THE COURT: Yes, you may have a running objection.

Go ahead.

MR. PINK: And I'll object. May I have a ruling, please?

THE COURT: Overruled.

MR. PINK: Thank you, sir.

MR. COFFEE: Don't you know that if those witnesses could have said anything good about this defendant, that Mr. Pink would have asked and doesn't it tell you that what you don't hear is often times more important than what you hear?

MR. PINK: Again, Your Honor, we would object to this line of argument as manifestly improper, harmful. It's prej-

udicial and it's inviting the jury to speculate and it's improper.

THE COURT: Overruled. Go ahead.

■ We find that the State's argument in this case was a blatant invitation to the jury to speculate about matters not in the record. The situation is exacerbated by the questionable nature of Coy's and Clark's value as "reputation" witnesses.

Further, a virtually identical argument was held to be an invitation for the jury to speculate about extraneous matters which the State was barred from introducing through the testimony of its reputation witnesses. *Robinson v. State*, 701 S.W.2d 895 (Tex.Crim.App.1985). There, the State argued as follows:

Now, Ladies and Gentlemen, I will just say this, you may think that the testimony was short from two witnesses that I put on the stand in the punishment stage but I submit to you that their testimony was very, very important for this reason, that those were the only questions I was allowed by law to ask that type of witness and (sic) this part of the trial—.

After defense counsel's objection was overruled, the State continued to argue:

On the other hand, Mr. Corbitt [defense attorney] could ask these witnesses upon what do they base their statements if he wanted to but no, I submit to you it is a reasonable deduction from the failure to ask those witnesses any questions that the answers would have been adverse to his client—.

Counsel for appellant again objected. The trial court overruled the objection. *Id.* at 900.

The *Robinson* court noted that it was quite possible that the jury in that case refused probation because of speculation as to matters not in the record, and stated, "[t]herefore, we are unable to say with confidence that the argument was harmless." *Id.* at 901.

Here, the jury foreman informed the trial judge on two separate occasions during punishment deliberations that, "the jury is deadlocked", that the disagreement was

"very wide" on assessment on punishment, and that compromise was impossible.[1] Following the judge's instructions, the jury continued deliberating and ultimately assessed punishment at 10 years confinement and a $10,000 fine. Under these circumstances, we cannot state with certainty that the prosecutor's improper argument did not contribute to the verdict on punishment.

We observe that, on at least three recent occasions, prosecutorial misconduct like that demonstrated here has resulted in unanimous decisions to reverse the judgment. *Robinson*, 701 S.W.2d at 895; *Green v. State*, 679 S.W.2d 516 (Tex.Crim. App.1984); *Wright v. State*, 609 S.W.2d 801 (Tex.Crim.App.1981).

Appellant's final ground of error is sustained.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

---

1.  We note that the same jury had also informed the court, during deliberations on appellant's   guilt, that it was unable to reach a verdict.