**Modified and Affirmed and Opinion Filed November 7, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-00194-CR**

**EDWARD LAMAR PORTER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1800712-T**

## MEMORANDUM OPINION

Before Justices Molberg, Nowell, and Goldstein
Opinion by Justice Molberg

Appellant Edward Porter was indicted for aggravated robbery, found guilty of lesser-included aggravated assault with a deadly weapon, and sentenced to ten years' confinement. In fourteen issues, appellant argues the trial court abused its discretion by admitting evidence of six prior convictions. The State raises six cross-points, arguing the judgment should be modified to reflect the proceedings as they were conducted in the trial court. We modify the trial court's judgment and otherwise affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

# I. Background

We limit our discussion of the record to facts pertinent to the evidentiary issues before us. Prior to trial, the State filed a rule 404(b) notice[1] listing extraneous offenses committed by appellant "that the State would possibly present during its case-in-chief or the punishment phase." These offenses included theft, committed in 1975; assault, committed in 1975; aggravated assault, committed in 1975; aggravated assault of a jailer, committed in 1989; theft, committed in 1995; and assault, committed in 2017.

At trial, evidence showed that appellant and the complainant, Glenn Hanlon, resided in the same apartment building and became friends. In 2017, they got together for Christmas dinner. A few days later, on New Year's Eve, Hanlon testified appellant came over and told him he owed appellant ten dollars. Hanlon testified appellant then attacked him and struck him with an iron bar in the face, arm, and leg. The attack lasted for "probably about twenty minutes." Hanlon sustained numerous injuries, including an injury to his leg severe enough to expose the bone. While Hanlon was on the ground, Hanlon said appellant rummaged around for money and took between sixty and eighty dollars and a watch. The building security guard found Hanlon and called the police; he described Hanlon's bleeding as profuse. Police eventually recovered a metal "pry bar" from appellant's apartment.

---

[1] "On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce [404(b)(2)] evidence—other than that arising in the same transaction—in its case-in-chief." Tex. R. Evid. 404(b)(2).

Appellant was interviewed by the police, and he acknowledged being involved in an altercation with Hanlon.

During the State's case-in-chief, the trial prosecutor informed the court it wanted to have a 404(b) hearing to determine the admissibility of appellant's 2017 assault. The State argued it was "the exact same modus operandi that we see here": in each case, appellant approached another resident in the building, told them they owed him money, started a verbal altercation, produced a weapon and used it, directed the police to the weapon in his apartment, and claimed self-defense. The State also argued the prior assault went "to the state of mind of the defendant and first aggressor." Appellant objected, arguing the prior was "irrelevant and highly prejudicial," and he disputed the similarities alleged by the State. But before the trial court held the requested hearing, the State abandoned its request for a hearing, telling the court, "I'm not going to pursue that at this point."

Appellant, who represented himself at trial, testified in his own defense. Among other things, he said he called Hanlon "Nino on some occasions because of . . . the movie New Jack City and a drug dealing kingpin." Appellant stated, "I'm 62 years old and I have never been accused of robbery. I have worked my whole life." He reiterated, "Just telling you a little bit about myself so that you know, I work and I make money." Appellant said Hanlon befriended him "because he knew that I was a working person and I always made money." Their relationship, appellant said, "was really based on drugs or him being able to supply me with drugs and

things, or whatever, and not really a friendship in the true sense of a friendship." Appellant then stated, "Even though I still tried—I mean, I strive to be at peace with everyone, you know. As the Bible says, peace with all men." Appellant said he had dinner with Hanlon despite a prior falling out because appellant "had really still tried to believe that there was -- that [Hanlon] wasn't just totally incorrigible, even though [Hanlon] sold drugs. I had tried to witness to [Hanlon]. Not that I'm a saint, but we had talked about the Bible and the Word of God and just, you know, faith and stuff."

Appellant said that, at their Christmas dinner, he and Hanlon used drugs. Appellant stated, "[Hanlon] tricked me into getting high," and said he later noticed he was missing money orders. Appellant was unsure whether Hanlon took them or appellant "misplaced them in this drug thing." Appellant went to the store and tried to use a gift card Hanlon had given him, but it did not work. So, after he could not reach Hanlon on the phone, appellant went to Hanlon's apartment and asked him about the money. Appellant said Hanlon became upset, and as appellant was leaving, Hanlon said something "explicit" and tried to slam the door on him. Appellant testified the door hit him on the shoulder and foot and then bounced back on Hanlon, knocking him to the floor. Appellant stated that Hanlon possibly fell over or fell on top of a bicycle. When appellant went to check on him, appellant said Hanlon reached for a pry bar and then ran at appellant. Hanlon swung at appellant, who "miss[ed] it and [caught] it"; they wrestled over the pry bar. Appellant got the bar from Hanlon and then "swung to try to clear the space between" them. Appellant

–4–

"didn't feel the bar hit [Hanlon] at all." Appellant said he did not understand how Hanlon got the injury he had but suggested he might have fallen on the bicycle positioned near the door. They wrestled again, and appellant told Hanlon, "please give me my money and let me get out of here and, you know, give it to me when you can." Appellant broke free from Hanlon, and when he was on his way out the door, Hanlon threw money at him.

Appellant stated he thought Hanlon made up his version of what happened because appellant "told him at one point in that discussion, that if [Hanlon] didn't give [appellant his] money, [appellant] was going to tell on [Hanlon] about all the drug dealing and all the stuff that [Hanlon] was doing." Appellant stated Hanlon was a drug dealer and had threatened appellant and others previously.

Later in his testimony, appellant again reiterated, "I work every day that I can. I don't rob people. I never robbed anybody in my life. I never robbed anybody in my life. I am 62 years old. That's why I am so offended. That's why I am willing to put my life on the line sitting here to tell you all, I never robbed anybody."

After appellant's testimony, the State asked to approach the bench, and the trial court conducted a hearing about the admissibility of prior-conviction evidence outside the jury's presence. The State argued appellant opened the door to such evidence by testifying he was a peaceful person and he never robbed anyone. Appellant objected. The State further argued the details of appellant's most recent assault were admissible as modus operandi evidence under rule 404(b). The trial

court ruled, "Let me tell you what I am going to allow. I am going to allow the fact that there is an assault conviction from the F16 case. The date of conviction is 2017. I will only allow you to talk about the conviction, without getting into the specific facts." After further argument, the court added, "We're not going to go into the specifics, but they're going to be able to bring up the issues of moral turpitude, because I believe you've opened that door. So I will allow the two thefts, the aggravated assault, the assault, aggravated assault of a jailer and the assault case."

On cross-examination, appellant was then questioned as follows:

Q. Okay. Now, you also said on your direct narrative that you just gave that you have never been accused of robbery and that you strive to be a peaceful person with people, right?

A. Yes, ma'am.

Q. As a matter of fact, you gave a pretty – the impression to this jury that you are a peaceful man, you never bother anybody; is that right?

A. That's correct.

Q. Well, how do you explain that you have two prior theft convictions as well as two prior assault convictions, as well as two felony aggravated assault convictions, one being an aggravated assault of a jailer?

A. Okay. How do I explain that is very simple, ma'am. I don't attack people. I have some altercations in my life, ladies and gentlemen. I'm not going to sit here and say I've lived 62 years and never had any conflict. I've had altercations in my life. Some of that, couple of those you speaking to, probably go back to -- how old are they? Could you tell me what year you are talking about? I'm saying – I'm asking this, because it depends. I've never initiated a conflict. I have fought. I told the sheriff when I was being booked in, she said, you have a problem -- you have a history of violence. And I said, no, ma'am, I have a history of self-defense. And God knows I learned a little self-defense in my life, and I only, only fight when I have to. You know, I mean, over the years I've – now with age and now the injuries, I obviously don't – I'm not out looking for trouble. And I try to live by the principles of the

–6–

Bible. I try to live to be at peace, as I said earlier, with all people, if at all possible. That's not always possible. Especially in the places I grew up and the places I lived in. There were people who were bullies or started fights and you had to fight or you were going to get run over. So I have some incidents in my life. I can assure you every one, including the one you mentioned about the jailer, was self-defense. He was trying to strangle -- I was in jail for tickets, for some citations at the time. And he was strangling me. First he was handling me real rough, and I said something he didn't like. He went to try to choke me. And this was a matter of public record. It was on film. But the judge did not allow it in the court. It was Judge -- well, it was -- that was in 1988. That was 30 years ago, that offense you speak of. But that was a matter of self-defense. He was trying to strangle me. I was trying to get him off of me. All I did was hit him, you know. And, you know, I still – for that, I went to -- I was charged and convicted because I couldn't afford an attorney and I had a state-appointed attorney and I didn't get good representation. And, you know, the Court didn't force them to bring the camera footage. They lied and said the cameras weren't on at booking that night, and they were not forced to prove it. So I got stuck. There was nothing I could do about it. I didn't have an attorney.

Q. Okay, Mr. Porter. So you are saying that you're a victim a lot. Is that fair to say?

A. No. I'm not victimized a lot, but I have had some altercations in 62 years. You don't get to be 62 years and not have some confrontations. But I've – I still maintain that I will always seek peace, you know, but I'm not going to roll over and let somebody beat me up, no.

Q. But you said that you have to use self-defense a lot. So we can agree to disagree, right?

A. I didn't say a lot.

Q. Well, now, you mentioned that those charges that I mentioned, the two thefts, the assault and aggravated -- two aggravated assaults were when you were younger. What about the aggravated assault that was -- that became an assault that happened in 2016? How old were you then?

A. I was -- you do the math, ma'am. I'm 62. In 2016, was two years ago. About year and a half, whichever, depending on what month that occurred in. But that was a matter of self-defense. Three guys tried to attack me in the apartment building where I lived. Same apartment building. And I had -- it was on camera and there were four witnesses

in the building, four witnesses in the lobby that told the police that and were willing to come forward and say that it was self-defense. I had four witnesses and they still overlooked it. They still arrested me. But four witnesses said it was self-defense. Three guys, troublemakers in the building, who were kicked out for drug dealing, just like this one was.

The trial prosecutor then asked to approach the bench again, and a conference was held off the record with the parties. No rulings appear in the record at this point, but the trial court later clarified: "I need to put on the record that we had a sidebar earlier . . . . I did rule that [appellant] had opened the door to discuss specifics regarding the assault from 2016. So earlier I had ruled we were not going to go into specifics, but once that door was open, I did allow it." Afterwards, the following questions were asked:

Q. (By [trial prosecutor]) Okay, Mr. Porter. You mentioned that 2016 assault conviction, right?

A. Yes.

Q. Now, isn't it true that that assault conviction was originally an aggravated assault?

A. Yes.

Q. With a deadly weapon, right?

A. Yes. Three people, one old man, crippled old man.

Q. And where did that aggravated assault happen?

A. It happened in the lobby of the apartment building. I already stated that it happened in the lobby of the apartment building.

Q. It happened in the lobby of the same apartment building that we're talking about now, right?

A. Yes, ma'am.

Q. And isn't it true in that case you stabbed a man?

A. Yes.

–8–

Q. Isn't it also true that when the police arrested you, you said that it was self-defense?

A. That's correct.

Q. The exact same self-defense line that you are telling us today, right?

A. It was self-defense then and it was self-defense now. What part are you not understanding?

Q. Isn't it also true that you told the police in that case that that man had stolen money out of your apartment?

A. No, I did not. That's not true.

Then, without objection, the State admitted a photograph of the knife appellant used in the 2017 assault. The following testimony followed:

Q. Okay. That's the kitchen knife that you actually stabbed Steven Durbin (phonetic) with, right?

A. I don't know Steven Durbin.

Q. Was Steven Durbin the victim of the case that you pled guilty to, that aggravated assault that was reduced to assault that we're talking about?

A. If that's his name, yeah. I don't know him. He didn't live in the building. He was with someone that lived in the building. There was three of them. He was with someone. He didn't live there. I don't know him.

Q. Do you remember where the police retrieved this knife?

A. I gave it to them. Well, I gave it to them, per se. I told them it was in my sink.

Q. Was it in your apartment?

A. It was in my apartment.

Q. Just like the weapon from our case we're here today was in your apartment?

A. Okay. Yes. And your point being...?

Q. I was just saying, just like the weapon that we have in our case today was in your apartment, right?

A. Yes, ma'am.

## II.    Discussion

Appellant argues in his first twelve issues that the trial court abused its discretion by allowing testimony about each of the six above-described prior convictions because appellant did not open the door to such evidence and because each was inadmissible under Texas Rule of Evidence 609. In his final two issues, appellant argues that testimony about the 2017 assault conviction was also inadmissible under rules 404(b) and 403.

### i.    *Standard of review and applicable law*

We review a trial court's evidentiary ruling for an abuse of discretion, which means we will not intercede "as long as the trial court's ruling was at least within the zone of reasonable disagreement." *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). If the ruling was correct under any theory of law applicable to the case, in light of what was before the court when it ruled, we will uphold the judgment. *Martin*, 173 S.W.3d at 467.

Evidence of a criminal conviction offered to attack a witness's character for truthfulness must be admitted if: (1) the crime was a felony or involved moral turpitude, regardless of punishment; (2) the probative value of the evidence outweighs its prejudicial effect to a party; and (3) it is elicited from the witness or established by public record. TEX. R. EVID. 609(a). If more than ten years have passed since the witness's conviction, evidence of the conviction is admissible only

if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect. TEX. R. EVID. 609(b).

However, evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). An exception to rule 609 applies when a witness's testimony concerning his past conduct suggests he has never been arrested, charged, or convicted of any offense. *Delk v. State*, 855 S.W.2d 700, 704 (Tex. Crim. App. 1993). If the witness "creates a false impression of law abiding behavior, he 'opens the door' on his otherwise irrelevant past criminal history and opposing counsel may expose the falsehood." *Id.* This "false impression" exception has been given a "narrow construction." *Murphy v. State*, No. 05-00-01407-CR, 2002 WL 461548, at *2 (Tex. App.—Dallas Mar. 27, 2002, no pet.) (not designated for publication). For the exception to apply, "the witness must do more than just imply that he abides by the law—he must in some way convey the impression that he has never committed a crime." *Theus v. State*, 845 S.W.2d 874, 879 (Tex. Crim. App. 1992). Nevertheless, a false impression is "an *impression*; it need not be expressly stated in magic language to exist." *Redmond v. State*, 629 S.W.3d 534, 546 (Tex. App.—Fort Worth 2021, pet. ref'd). This exception has also been articulated by the court of criminal appeals as follows: "If a defendant testifies to a blanket statement of good conduct or character . . . he may 'open the door' by leaving a false impression with the jury about a relevant act or character trait." *Daggett v. State*, 187 S.W.3d 444,

–11–

452 (Tex. Crim. App. 2005).[2] In determining the admissibility of such impeachment evidence, "courts consider (1) how broadly the question asked might be interpreted, (2) evidence that might reflect the question's tenor, and (3) the question's relationship to the substantive issues in the case." *Patrick*, 2018 WL 3968781, at *21 (citing *Delk*, 855 S.W.2d at 704–05). Courts should consider the context of a statement in determining whether it left a false impression. *See Grant v. State*, 247 S.W.3d 360, 367 (Tex. App.—Austin 2008, pet. ref'd).

### ii. *Appellant opened the door to prior offenses*

The State argues appellant opened the door to evidence of the two assault convictions, from 1975 and 2017, and the two aggravated assault convictions, from 1975 and 1989, when he made "gratuitous statements about his peaceful nature." The State argues appellant opened the door to evidence of the two theft convictions, from 1975 and 1995, when he repeatedly claimed he had never robbed anyone.

---

[2] We have previously interpreted the exceptions articulated in *Delk* and *Daggett* as the same exception, or at least related. *See Patrick v. State*, No. 05-18-00435-CR, 2018 WL 3968781, at *21 (Tex. App.—Dallas Aug. 20, 2018, no pet.) (mem. op., not designated for publication); *Mapolisa v. State*, No. 05-16-00711-CR, 2017 WL 2952994, at *3 (Tex. App.—Dallas July 11, 2017, pet. ref'd) (noting the *Daggett* exception "in addition" to the *Delk* exception). The court of criminal appeals in *Winegarner v. State*, 235 S.W.3d 787, 790–91 (Tex. Crim. App. 2007), explained the two as follows:

> [W]hen a witness, on direct examination, makes a blanket assertion of fact and thereby leaves a false impression with respect to his prior behavior or the extent of his prior troubles with the law, "he 'opens the door' on his otherwise irrelevant past criminal history and opposing counsel may [impeach him by] expos[ing] the falsehood." *Delk v. State*, 855 S.W.2d 700, 704 (Tex. Crim. App. 1993). We have also recognized that when a witness's blanket assertion of exemplary conduct "is directly relevant to the offense charged," the opponent "may both cross-examine the [witness] and offer extrinsic evidence rebutting the statement." *Daggett v. State*, 187 S.W.3d 444, 453 n.24 (Tex. Crim. App. 2005).

We conclude the trial court could have reasonably determined that appellant's testimony left a false impression with the jury that he had never committed a violent offense or stolen another's property. We thus conclude the trial court did not abuse its discretion by allowing the State to impeach appellant with the six prior convictions at issue here. First, appellant volunteered, in his own narrative testimony, "I strive to be at peace with everyone, you know. As the Bible says, peace with all men." This general statement of appellant's character was made after appellant emphasized he had never been accused of robbery and had always worked. Appellant contrasted his own character with Hanlon's, whom he depicted as a possibly "incorrigible" drug dealer appellant was trying to help. In context, then, appellant's statement could have been understood by the jury as a statement of his past conduct—that he had lived a non-violent life—in contrast to Hanlon. *Cf. Garcia v. State*, 454 S.W.2d 400, 406 (Tex. Crim. App. 1970) (holding that, when appellant's "evidence clearly left the jury with the impression that the inexperienced appellant was confronted with an experienced fighter," the State was authorized to inquire into appellant's extraneous fights). Accordingly, the trial court could have reasonably concluded appellant's "blanket statement of good conduct or character" left "a false impression with the jury about a relevant act or character trait" that the State was permitted to rebut with evidence of appellant's four prior assaultive offenses. *See Daggett*, 187 S.W.3d at 452; *see also Roberts v. State*, 29 S.W.3d 596, 601 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) ("When

–13–

a defense witness presents a picture that the defendant is not the type of person to commit the charged offense, the prosecution may impeach the defense witnesses' testimony by introduction of similar extraneous offenses."). We conclude the trial court did not abuse its discretion by allowing the State to impeach appellant with his two prior assault convictions and two prior aggravated assault convictions.

Second, appellant repeatedly stated that he had never been accused of robbery, he had never robbed anyone, and in conjunction with these statements, appellant repeatedly emphasized that he worked for a living and made money, implying he did not need to take anyone else's property. Given that he worked every day he could and did not rob people, appellant said, he was offended by the accusation in this case. While we cannot agree with the State's argument in the trial court that "theft is a derivative of robbery,"[3] we observe that theft is a "crime of deception" and "similar to [robbery] in that [it] involve[s] taking property." *See Meadows v. State*, No. 02-12-00643-CR, 2014 WL 84207, at *2 (Tex. App.—Fort Worth Jan. 9, 2014) (mem. op., not designated for publication), *rev'd on other grounds*, 455 S.W.3d 166 (Tex. Crim. App. 2015). Like appellant's testimony relating to his peaceful character, appellant's statements relating to robbery and working his whole life were made unprompted, during his pro se narrative testimony. That these statements were repeated several times demonstrates appellant did not inadvertently make the

---

[3] Theft is a *lesser-included* offense of robbery when, as here, an indictment alleges the defendant committed robbery by threatening imminent bodily injury in the course of committing theft. *See Knott v. State*, 513 S.W.3d 779, 795 (Tex. App.—El Paso 2017, pet. ref'd).

statements. *See Paita v. State*, 125 S.W.3d 708, 713 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Though denying the commission of one crime does not generally allow admission of evidence a different crime, *see Theus*, 845 S.W.2d at 879 (testimony that appellant was not involved with drugs did not open door to prior arson conviction), we think that, here, the trial court could have reasonably concluded that appellant's statements, considered in context, left the jury with a false impression that appellant had never committed a crime involving taking another's property. Accordingly, we conclude the trial court did not abuse its discretion by allowing the State to impeach appellant by questioning him about the two prior theft offenses. Appellant's first twelve issues are overruled.

### iii. *Rules 404(b) and 403*

In appellant's final two issues, he argues the trial court abused its discretion by admitting evidence of the 2017 assault because (1) the State did not establish any 404(b)-admissible purpose, and (2) any probative value in its admission was substantially outweighed by the danger of unfair prejudice under rule of evidence 403.

The details of a prior conviction are generally inadmissible for purposes of impeachment. *Mays v. State*, 726 S.W.2d 937, 953 (Tex. Crim. App. 1986). But, as noted above, evidence that is otherwise inadmissible may become admissible when a party opens the door to it. *Williams*, 301 S.W.3d at 687. If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party

may inquire into any other part on the same subject. TEX. R. EVID. 107. "When a defendant 'opens the door' by introducing evidence that only partially details an incident, the State may introduce otherwise inadmissible evidence to complete the presentation of the incident to the jury." *Johnson v. State*, No. 05-06-01269-CR, 2007 WL 4157127, at *2 (Tex. App.—Dallas Nov. 26, 2007, no pet.) (not designated for publication) (citing *Arebalo v. State*, 143 S.W.3d 402, 407–08 (Tex. App.— Austin 2004, pet. ref'd)).

Here, pursuant to the trial court's initial ruling, the State impeached appellant using his prior convictions, and asked appellant how old he was when he committed the 2016 assault. In response, appellant non-responsively offered that that offense,

> was a matter of self-defense. Three guys tried to attack me in the apartment building where I lived. Same apartment building. And I had — it was on camera and there were four witnesses in the building, four witnesses in the lobby that told the police that and were willing to come forward and say that it was self-defense. I had four witnesses and they still overlooked it. They still arrested me. But four witnesses said it was self-defense. Three guys, troublemakers in the building, who were kicked out for drug dealing, just like this one was.

Appellant thus went beyond the State's line of inquiry and testified generally about his version of the assault. The trial court could have reasonably concluded that appellant opened the door, and the State could "introduce otherwise inadmissible evidence to complete the presentation of the incident to the jury[,]" *Johnson*, 2007 WL 4157127, at *2, and we need not reach appellant's contention about rule 404(b).

–16–

We conclude the trial court did not abuse its discretion by allowing the State to question appellant about his 2017 conviction for assault.

Despite this, a matter offered on the justification of completeness may nevertheless be excluded under rule 403 if its prejudicial effect substantially outweighs its probative value. *Arebalo*, 143 S.W.3d at 408. The trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence. *See* TEX. R. EVID. 403. Analysis under this rule includes consideration of the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012).

In appellant's account, three troublemakers and drug dealers attacked him in his apartment building, and he acted in self-defense. The State's further inquiry at issue here added these additional facts: the offense was originally charged as aggravated assault; appellant stabbed one of the men; appellant claimed he acted in self-defense; the complainant did not live in the building; and the police recovered a knife from appellant's apartment.

The evidence here had probative value in allowing the State to further impeach appellant in light of his testimony about his peaceful character. But the evidence

also had potential to impress the jury in an irrational way. *See Robinson v. State*, 701 S.W.2d 895, 899 (Tex. Crim. App. 1985) (noting "the inherent prejudicial effect of using extraneous offenses"). The evidence did not take a significant amount of time to develop, occupying roughly four pages of the reporter's record. The State elicited only limited details additional to those provided by appellant. Finally, the State had some need for the evidence to present a more complete picture of the event described by appellant as one in which he was the victim. Considering these factors, we conclude the trial court could have reasonably determined the prejudicial effect of the evidence did not substantially outweigh its probative value. The trial court did not abuse its discretion, and appellant's thirteenth and fourteenth issues are overruled.

### iv. *Judgment modifications*

The State argues in its brief we should modify the judgment in six ways. We sustain the State's six issues, as discussed below. We are empowered by the rules of appellate procedure to "modify the trial court's judgment and affirm it as modified[.]" TEX. R. APP. P. 43.2. We can correct and reform the judgment of the trial court to make the record speak the truth when we have the record to do so. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).

Appellant was indicted for committing aggravated robbery under penal code section 29.03(a)(2) (committing robbery and using or exhibiting a deadly weapon). The record reflects that the jury, however, found appellant guilty of the lesser-

included offense of aggravated assault with a deadly weapon. The judgment before us mistakenly reflects that appellant was convicted of aggravated robbery under section 29.03, a first-degree felony. Accordingly, we modify the judgment to reflect that appellant was convicted of aggravated assault with a deadly weapon, a second-degree felony under section 22.02 of the penal code.

The indictment also included a deadly weapon allegation and an enhancement paragraph, alleging that appellant was, prior to the commission of the charged offense, finally convicted of aggravated assault of a jailer on February 9, 1989 in Dallas County in Cause Number F8869013. The jury found appellant guilty of aggravated assault with a deadly weapon. Then, at the punishment trial, appellant pleaded not true to the enhancement allegation. After the punishment phase of trial, the trial court found the allegation to be true, and it made a deadly weapon finding. The judgment before us, however, lists "N/A" under findings on deadly weapon, plea to first enhancement paragraph, and findings of first enhancement paragraph. Accordingly, we modify the judgment as follows: appellant pleaded "not true" to the first enhancement paragraph; the trial court found the first enhancement paragraph to be "true"; and the deadly weapon finding was "yes, not a firearm." Further, we modify the second page of the judgment, under "the following special findings or orders," to reflect a finding that appellant used or exhibited a deadly weapon during commission of the offense.

Finally, the record reflects that appellant waived his right to counsel and represented himself at trial. The judgment, however, indicates under "attorney for defendant" that Sherrod Edward represented him, and that "defendant appeared in person with counsel" under the "counsel / waiver of counsel" section of the judgment. We modify the judgment such that "N/A" appears under "attorney for defendant," and that appellant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court under "counsel / waiver of counsel."

## III.  Conclusion

We overrule appellant's fourteen issues. The "offense for which defendant convicted" portion of the judgment is modified to state "aggravated assault with a deadly weapon"; the "degree of offense" portion of the judgment is modified to state "second-degree felony"; and the "statute for offense" portion of the judgment is modified to state "22.02 Penal Code." The "plea to first enhancement paragraph" portion of the judgment is modified to state "not true"; the "findings on first enhancement paragraph" portion of the judgment is modified to state "true"; the "findings on deadly weapon" portion of the judgment is modified to state "yes, not a firearm"; and the "following special findings or orders" portion of the judgment is modified to state "appellant used or exhibited a deadly weapon during commission of the offense." The "attorney for defendant" portion of the judgment is modified to state "N/A" and the "counsel / waiver of counsel" portion of the judgment is

modified so that "defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court" is checked and "defendant appeared in person with counsel" is not checked. As modified, we affirm the trial court's judgment.

<div style="margin-left: 50%;">

/Ken Molberg/
KEN MOLBERG
JUSTICE

</div>

1900194f.u05
DO NOT PUBLISH
Tex. R. App. P. 47



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EDWARD LAMAR PORTER,
Appellant

No. 05-19-00194-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-1800712-T.
Opinion delivered by Justice
Molberg. Justices Nowell and
Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The "offense for which defendant convicted" portion of the judgment is **MODIFIED** to state "aggravated assault with a deadly weapon."

The "degree of offense" portion of the judgment is **MODIFIED** to state "second-degree felony."

The "statute for offense" portion of the judgment is **MODIFIED** to state "22.02 Penal Code."

The "plea to first enhancement paragraph" portion of the judgment is **MODIFIED** to state "not true."

The "findings on first enhancement paragraph" portion of the judgment is **MODIFIED** to state "true."

The "findings on deadly weapon" portion of the judgment is **MODIFIED** to state "yes, not a firearm."

The "following special findings or orders" portion of the judgment is **MODIFIED** to state "appellant used or exhibited a deadly weapon during commission of the offense."

The "attorney for defendant" portion of the judgment is **MODIFIED** to state "N/A."

The "counsel / waiver of counsel" portion of the judgment is **MODIFIED** so that "defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court" is checked and "defendant appeared in person with counsel" is not checked.

As **REFORMED**, the judgment is **AFFIRMED**.


Judgment entered this 7th day of November, 2022.